IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| KEITH J. MITAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-3207-CV-S-SWH |
| | ) | |
| DONNA OSBORN, | ) | |
| COMMUNITY PUBLISHERS, INC., and | ) | |
| OZARKS NEWSSTAND, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on the Motion of Defendants Donna Osborn and Community Publishers, Inc. to Dismiss Plaintiff's Amended Complaint and/or for Summary Judgment (doc #14).

I. BACKGROUND

On May 27, 2010, plaintiff Keith Mitan, appearing pro se, filed a one-count complaint alleging defamation against the defendants on behalf of himself and the Estate of Frank Mitan as the result of an article published on May 28, 2008, in the Christian County Headliner News entitled Mitan Used Aliases in Alleged Business Scams. (Doc #1) Defendants filed a motion to dismiss or in the alternative for summary judgment. (Doc #8) In addition to the substantive arguments contained in the motion, the motion also claimed that plaintiff Keith Mitan was engaged in the unauthorized practice of law in attempting to pursue a claim on behalf of the estate of Frank Mitan. (Doc #9 at 32-35)

In response to the defendants' motion, plaintiff Keith Mitan filed an amended complaint alleging the same defamation claim, but solely on his own behalf. (Doc #13) Defendants then filed

a second motion to dismiss and/or for summary judgment, which is currently pending.[1] (Doc #14)

Defendants contend that Keith Mitan's claims are barred by the fair report privilege. (Doc #15 at 27-33) Plaintiff opposes defendants' motion arguing that the fair report privilege does not apply because the allegedly defamatory statements did not deal with a matter of public concern, certain statements in the article are not a report of an official proceeding nor are the statements a fair or accurate report of the proceedings. (Doc #20 at 8-17)

## II. APPLICABLE LEGAL STANDARD

Defendants seek the dismissal of the amended complaint for failure to state a claim upon which relief can be granted and/or for summary judgment pursuant to Rules 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure. (See docs #14 and #15) In support of the motion, defendants attached 59 separate documents and set forth 101 allegedly uncontroverted facts based upon those records.[2] (Doc #15 at 2-26)

Rule 12(d) of the Federal Rules of Civil Procedure provides:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In the circumstances of this case, the Court concludes that, where appropriate, it may consider matters outside the pleadings utilizing the summary judgment standard without providing a further opportunity for the parties to present additional materials. The motion and accompanying

---

[1] The second motion to dismiss rendered the first motion moot.

[2] Defendants have requested that the Court take judicial notice of certain court filings. The Court may take judicial notice of court filings pursuant to Federal Rule of Evidence 201.

2

suggestions were clearly titled a motion to dismiss or, in the alternative, a motion for summary judgment. (Docs #14 and #15) See Riehm v. Engelking, 538 F.3d 952, 961-62 n.5 (8th Cir. 2008)(parties have constructive notice that court will treat motion as one for summary judgement where moving party states it is moving for summary judgment and parties submit and refer to material outside complaint).

Additionally, the Court notes that in responding to a show cause order, plaintiff acknowledged that the defendants were really seeking summary judgment.[3] Plaintiff's suggestions in opposition to defendants' motion indicate the suggestions are in opposition to the motion to dismiss or alternatively the motion for summary judgment. (Doc #20 at 1) Further, in opposing defendants' motion, plaintiff has also relied upon materials outside the pleadings as well as contending that the facts put forth by defendants contained omissions and were distorted. (See doc #20 at 2-8 and exhibits filed as docs #20-1 through #20-8)) Thus, all parties have sufficient notice that the motion before the Court is one for summary judgment.

Summary judgment pursuant to Rule 56 is appropriate when the record shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party has the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific

---

[3]Plaintiff's response includes the statement that defendants have filed "a motion to dismiss pursuant to Rule 12(b)(6) and/or for summary judgment (which is actually a motion for summary judgment, instead of a motion to dismiss pursuant to Rule 12(b)(6))." (Doc #21 at 2)

3

facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Court must review the facts in a light most favorable to the party opposing the motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. See Lane v. Ground Round, Inc., 775 F. Supp. 1219, 1221 (E.D. Mo. 1991). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Id. See also Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993)("At the summary judgment stage, we resolve all disputed facts and draw all inferences in favor of the plaintiff.")

### III. FACTS

As part of their suggestions in support of the summary judgment motion, defendants set forth 101 facts which they contend are uncontroverted. In opposing the motion for summary judgment, plaintiff did not controvert any of the facts defendants alleged were undisputed. Pursuant to Local Rule 56.1(a) "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." Thus, these facts are deemed admitted.

However, plaintiff opposes the summary judgment motion on the basis that the facts set forth by defendants are not relevant to the defamatory statements at issue. (Doc. #20 at 1) Rather than setting forth all facts which may be undisputed, but whose relevancy is questionable, the Court will refer to the facts set forth by defendants as necessary for a resolution of the pending motion.

### IV. DISCUSSION

A.   Statements Alleged to Be Defamatory

Plaintiff's amended complaint alleges that the defendants made false and defamatory

4

statements regarding him in the May 28, 2008, article in the Christian County Headliner News entitled <u>Mitan Used Aliases in Alleged Business Scams</u>. Plaintiff alleges in the amended complaint:

> 7. That on or about May 28, 2008, the Defendants made false and defamatory statements regarding Mitan. <u>A copy of such statements is annexed hereto and incorporated by reference herein as "Exhibit A".</u> <u>Such statements include, but are not limited to,</u> the following:
>
>> Not only have Ken Mitan, his brother Keith and father Frank allegedly stolen mountains of money from unsuspecting small-business owners coast to coast, including Nixa's D&E Plumbing, they've sued almost anybody who complains about it.

(Doc #13 at ¶ 7)(emphasis added)

The first inquiry by the Court is whether plaintiff's defamation claim is limited to the statements specifically set forth in the amended complaint or whether he may incorporate by reference the article in its entirety, and thereby require the Court to determine if any other statements in the article could support his defamation claim.

Under Missouri law, a plaintiff complaining of defamation must specifically set forth in the complaint the words which are alleged to be defamatory. <u>See</u> <u>Nazeri v. Missouri Valley College</u>, 860 S.W.2d 303, 313 (Mo. en banc 1993)(in libel cases it is not unreasonable to expect verbatim reproduction of offending statement). Thus, in <u>Missouri Church of Scientology v. Adams</u>, 543 S.W.2d 776, 777 (Mo. en banc 1976), the Missouri Supreme Court rejected the plaintiff's attempt to simply attach copies of the allegedly offending articles without identifying the specific statements at issue. In discussing the basis for its decision, the court explained that allowing a plaintiff to merely attach the written article alleged to contain defamatory material would require the court to search lengthy articles in an attempt to discover whether they contain words which are libelous. <u>Id.</u> Because the plaintiff knows which words are claimed to be libelous for which damages are sought,

5

the plaintiff can be required to specify them with particularity. Id. See also Klein v. Victor, 903 F. Supp. 1327, 1332 n.1 (E.D. Mo. 1995)(only specific words pled in complaint are actionable; court will not consider allegations that "other passages" of book were also defamatory.)

A further rationale for the rule requiring that defamation be pled with specificity is that unless the complaint sets forth the alleged defamatory statements, a defendant is unable to properly form responsive pleadings. See Asay v. Hallmark Cards, Inc., 594 F.2d 692, 699 (8th Cir. 1979). While federal courts require only notice pleading, a plaintiff must still plead the substantive requirements of state law. See Gleich v. Tastefully Simple, Inc., 2005 WL 3299187, *9 (N.D. Ill. Dec. 2, 2005). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. See Brown v. Kraft Foods, Inc., 2011 WL 1131516, *1 (E.D. Mo. Mar. 28, 2011). Thus, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Judged by these standards, the Court concludes that the only statements at issue are those specifically set forth in the amended complaint that "[n]ot only have Ken Mitan, his brother Keith and father Frank allegedly stolen mountains of money from unsuspecting small-business owners coast to coast, including Nixa's D&E Plumbing, they've sued almost anybody who complains about it."

  B. Elements of a Defamation Claim

The elements of a defamation claim under Missouri law are: (1) the publication; (2) of a defamatory statement; (3) that identifies the plaintiff; (4) that is false; (5) that is published with the requisite degree of fault; and (6) that damages the plaintiff's reputation. See Overcast v. Billings

Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. en banc 2000). See also MAI 23.06(1). Analyzing an allegedly defamatory statement in which the defendant has asserted a qualified privilege is a two-step process. First, the statement must be found to be defamatory. See Pape v. Reither, 918 S.W.2d 376, 380 (Mo. Ct. App. 1996). Second, if the statement is found to be defamatory, the inquiry is whether one or more privileges shield the defaming party from legal action. Id. Both of these inquiries are questions of law for the court. Id. at 379 (whether language is defamatory is question of law); Erickson v. Pulitzer Publ'g Co., 797 S.W.2d 853, 857 (Mo. Ct. App. 1990)(whether circumstances give rise to legal privilege is question of law).

For the limited purposes of the pending summary judgment motion, defendants have not alleged that plaintiff has failed to plead the existence of a defamatory statement or that viewing the undisputed material facts in the light most favorable to plaintiff, plaintiff cannot satisfy all of the elements of a defamation claim. Rather, defendants ask the Court to proceed to step two of the analysis and hold, as a matter of law, that plaintiff's claims are barred by the fair report privilege. (Doc #15 at 27-34)

      C.     <u>Legal Requirements for Application of the Fair Report Privilege</u>

Reports of legislative, judicial or executive proceedings and the statements made therein are subject to a qualified privilege. See Spradlin's Mkt., Inc. v. Springfield Newpapers, Inc., 398 S.W.2d 859, 864 (Mo. 1966). Basically, the privilege allows the press to publish accounts of official proceedings or reports even when they contain defamatory statements. See Medico v. Time, Inc., 643 F.2d 134, 137 (3rd Cir.), cert. denied, 454 U.S. 836 (1981). "So long as the account presents a fair and accurate summary of the proceedings, the law abandons the assumption that the reporter adopts the defamatory remarks as his own." Id. at 137-38. "The basis of this privilege is the interest

7

of the public in having information made available to it as to what occurs in official proceedings and public meetings." Restatement (Second) of Torts § 611 (1977) at Comment a.

Under Missouri law, which has adopted the Restatement (Second) of Torts § 611, a qualified privilege applies in certain cases involving the publication of an allegedly defamatory statement contained in the report of a public proceeding. See Shafer v. Lamar Publ'g Co., 621 S.W.2d 709, 713 (Mo. Ct. App. 1981); Lami v. Pulitzer Publ'g Co., 723 S.W.2d 458, 459 (Mo. Ct. App. 1986). The rule specifically provides:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Restatement (Second) of Torts § 611. Thus, the privilege is limited to those matters of public concern which are stated in a report of an official action or proceeding or a meeting open to the public. See Englezos v. Newspress & Gazette Co., 980 S.W.2d 25, 32 (Mo. Ct. App. 1998). In addition, the matter published must be a fair and accurate report or abridgement. See Klein v. Victor, 903 F. Supp. 1327, 1336 (E.D. Mo. 1995).

Comment f to the Restatement (Second) of Torts § 611 discusses the "fair and accurate" requirement of the fair report privilege. It provides in part:

> *f. Accuracy and fairness of report.* The rule stated in this Section requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.
>
> Not only must the report be accurate, but it must be fair. Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as

> for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article. **The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.**

Restatement (Second) of Torts, § 611 at Comment f (emphasis added).

### D. Application of the Fair Report Privilege in This Case

Defendants claim that they satisfy the requirements of the fair report privilege for the reason that:

> There is simply no question that the newspaper got it right when it stated that the Mitans had "allegedly" victimized small business owners and that they frequently sued for defamation. The evidence to support both of these statements is replete in the scores of court filings attached to Defendants' motion.

(Doc. #15 at 29)(footnote omitted)

Plaintiff contends that the fair report privilege does not apply because the defamatory statements do not deal with matters of public concern; the statement that plaintiff "sued almost anybody who complains" is not a report of a proceeding and the statement that plaintiff has "allegedly stolen mountains of money from unsuspecting small-business owners coast to coast, including Nixa's D&E Plumbing" is not accurate and complete or a fair abridgement of the legal proceedings. (Doc #20 at 9-17)

While defendants seek to characterize the issue as whether the Mitans have "victimized" small business owners, the statements actually before the Court are the following:

1. Ken Mitan, his brother Keith and father Frank have allegedly stolen

9

> mountains of money from unsuspecting small-business owners coast to coast;

> 2. The small businesses referred to include Nixa's D&E Plumbing; and

> 3. They have sued almost anybody who complains about it.

After reviewing the uncontroverted facts and the 59 supporting exhibits, the Court concludes that the present record does not support a finding that the above statements are an accurate and complete report of or a fair abridgement of the proceedings documented in the exhibits. While much of the litigation described in the exhibits may involve shady or questionable business deals, the Court cannot find that an accurate summary of the litigation documents attached to the summary judgment motion was that Keith Mitan stole mountains of money from unsuspecting small business owners from coast to coast and then sued almost anybody who complained about it.

For example, the Michigan litigation between Mitan Properties Company, VI, Keith and Kenneth Mitan and Frandorson Properties arose out of a quiet title action involving three shopping centers subject to a $22 million dollar purchase agreement. (See Defendants' Uncontroverted Facts (hereinafter DUF) ## 7-14) However, in that case, the monetary award against the Mitan brothers was to reimburse the opposing parties for costs and attorney fees, not to reimburse a business for money allegedly stolen by Keith, Kenneth or Frank Mitan. (See doc #14-10 at 1)

Defendants also rely on litigation involving Maura Campbell, the public relations director of the Michigan Department of Consumer and Industry Services, in support of their motion. However, the only plaintiff in the Campbell litigation was Kenneth Mitan who sued for defamation because of Ms. Campbell's statement that Kenneth Mitan was "a guy who has figured out all the loopholes, all the ways he can appeal, all the ways that he can stay off having to pay his penalties."

10

(DUF #22)

Other court proceedings cited by defendants in support of their motion for summary judgment involve defamation lawsuits filed in two different jurisdictions by Keith Mitan against Liberty Corporation, the television station owned by Liberty, and one its employees, Kara Gormley, concerning written statements made on an internet website. (See DUF ## 24-42) However, as plaintiff points out, in the Gormley litigation, as a result of a settlement agreement, all statements made about Keith Mitan were retracted. (See doc #20-8) Explaining why the retraction is immaterial for the pending summary judgment motion, defendants maintain:

> the pending summary judgment motion in this case is NOT based on the facts set out in the underlying WIS News 10 report. Instead, Defendants' pending motion relies on the statements contained in the court filings in the Michigan and South Carolina Gormley cases–which were not retracted.

(Doc #22 at 5) Defendants then cite to statements in the summary judgment memorandum filed in the Gormley case referring to "a number of shady business deals" and "questionable business deals in multiple states" in which Keith and Kenneth Mitan had been involved. (Id.) Defendants further cite the Gormley briefing as containing information that Keith and his brother had been named as defendants in civil suits and bankruptcy proceedings and had been involved in questionable business practices and manipulation of the legal system. (Id.)

A shady business deal, a questionable business practice or involvement as a defendant in a bankruptcy proceeding or other litigation does not equate to stealing mountains of money from unsuspecting small business owners. Moreover, even if the briefing in the Gormley litigation contained information supporting the statements at issue in this case, defendants have cited no cases which suggest that the fair report privilege can be met by pulling statements out of a brief filed in

11

an official proceeding without reporting the source of the information or the ultimate outcome of the proceeding.

In Christian County, Missouri, Kenneth Mitan, not Keith Mitan, was charged with stealing from D&E Plumbing. (See DUF ## 73-79) Plaintiff also contends, and defendants do not offer any counter-evidence, that the civil action brought by stockholders of D&E Plumbing did not contain any allegations involving Keith Mitan. (See doc #20 at 11; doc #20-2 at 1-8) Defendants contend that the reference to D&E Plumbing is preceded by the word "including" indicating that it is only one example of businesses that have been victims of the Mitan family. (Doc #22 at 3) While the Court agrees that the context suggests that D&E Plumbing is an example of a business being referred to in the sentence, the sentence refers to Ken, Keith and Frank Mitan. The use of the term "and" appears to link all of those listed to the conduct. Moreover, assuming that defendants' argument is valid, they offer no evidence of other unsuspecting small business owners from whom Keith Mitan has allegedly stolen mountains of money.

Other exhibits relied upon by defendants show that Kenneth and Frank Mitan were indicted by a federal grand jury in the United States District Court for the Eastern District of Pennsylvania on charges of mail and wire fraud in connection with the victimization of small business owners. (DUF ## 83-90) Ultimately, Kenneth was convicted on six counts and Frank was convicted on four counts. (DUF #86) Defendants contend that the government's sentencing memorandum claimed that Keith Mitan had provided "knowing participation" to Kenneth Mitan's crime spree. (DUF #89) However, the government did not charge Keith Mitan in that case.

The trial court's summary of the evidence presented in the criminal case brought against Kenneth and Frank Mitan in the United States District Court for the Eastern District of Pennsylvania

demonstrates that they conspired to defraud owners of small businesses of money and property. (See doc #14-46)  However, the summary of the evidence set forth in this document does not allow a conclusion that the scheme led to the stealing of mountains of money by Keith Mitan, who is not mentioned.  (Id.)  While the government's sentencing memorandum provides more details concerning the amounts of money taken from victims through the scheme, the only specifics mentioned concerning Keith Mitan's participation involve his obtaining money after the fact from the scheme.  For example, the government explained that money obtained by Kenneth Mitan's fraud scheme passed through various "shell accounts."  In one instance, the "shell account" was controlled by Kenneth and Keith's mother who wrote various checks, including one to Keith.  (Doc #14-49 at 12-13 and n.11)  The government also alleged that Kenneth Mitan "diverted significant amounts of stolen money to his brother and other attorneys who, usually unwittingly, helped the defendant use litigation as a manner and means of a criminal conspiracy."  (Id. at 34)  The reference in the sentencing memorandum to Keith Mitan's "knowing participation" is that "[t]he knowing participation of Frank Mitan, Teresa Mitan, Keith Mitan, David Wendell, Charro Pankratz, and Bruce Atherton was significant – but would have been inconsequential without the leadership and vision of this defendant."  (Id.)

Criminal charges were also filed against Kenneth Mitan in New Jersey which contained allegations similar to those set forth in the indictment filed in the Eastern District of Pennsylvania. However, Keith Mitan was not a defendant in the New Jersey criminal case.  (DUF ## 80-82)

Thus, none of the criminal cases involving allegations of theft of money and property from small business owners, State of Missouri v. Kenneth Mitan (DUF ## 73-79), State of New Jersey v. Kenneth Mitan (DUF ## 80-82) nor United States v. Frank and Kenneth Mitan (DUF, ## 83-90),

13

named Keith Mitan as a defendant. Additionally, the Court notes that as part of defendants' motion for summary judgment there has been no showing as to which, if any, documents defendants or their staff reviewed prior to authoring the article. Defendants seem to claim that a review of the official records on which the fair report privilege is based is unnecessary, citing this Court's opinion in Kenney v. Scripps Howard Broadcasting Co., 2000 WL 33173915 (W.D. Mo. June 28, 2000), aff'd, 259 F.3d 922 (8th Cir. 2001). In that case, however, the defendant's station personnel had at least reviewed the Investigative Report prepared by the police department prior to airing the subject newscast, although it was unclear whether the actual missing person report was reviewed. The fair report privilege "is intended to facilitate media reporting of official proceedings so that the public may be informed." Bufalino v. Associated Press, 692 F.2d 266, 271 (2nd Cir. 1982)(citing Comment a to the Restatement (Second) of Torts § 611). The privilege does not protect "unattributed, defamatory statements supported after-the-fact through a frantic search of official records." Id. "For where the media does not directly or indirectly rely upon official records, the policy underlying the privilege is inapplicable and the privilege itself should not be applied." Id.

In this case, no affidavits or statements were provided by anyone concerning the documents reviewed prior to the publication of the article at issue. Given the lack of an affidavit and the number of records cited which provide no support for the allegedly defamatory statements at issue, it appears that this motion for summary judgment may have been based upon the type of after-the-fact review of records to which the court in Bufalino refers.

V. CONCLUSION

Based upon the forgoing, it is

ORDERED that the Motion of Defendants Donna Osborn and Community Publishers, Inc.

14

to Dismiss Plaintiff's Amended Complaint and/or for Summary Judgment (doc #14) is denied. It is further

ORDERED that defendants are given twenty days from the date of this Order in which to answer or otherwise respond to the Amended Complaint. It is further

ORDERED that because the Court deferred entering a scheduling order until this motion was ruled, the parties are to provide an amended proposed scheduling order within thirty days.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE
