IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KEITH J. MITAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-03207-CV-S-SWH |
| | ) |
| DONNA OSBORN, | ) |
| COMMUNITY PUBLISHERS, INC., and | ) |
| OZARKS NEWSSTAND, | ) |
| | ) |
| Defendants. | ) |

ORDER

Pending before the Court is Defendants' Motion for Sanctions (doc. #85), in which defendants seek dismissal of this action pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) as a sanction for plaintiff's "willful failure to obey repeated orders of this Court to provide discovery. (Doc. #85 at 1) In response, plaintiff contends that because it is clear that defendants will not be able to prevail at trial, defendants are determined to prevent the Court from reaching the merits of this action. (Doc. #87 at 2) Plaintiff also contends that he has produced 1,000 documents and submitted eight responses to defendants' requests for production of documents. (Doc. #87 at 5) For the reasons set forth herein, the Court finds that plaintiff willfully and in bad faith failed to comply with discovery orders of the Court. Accordingly, plaintiffs' complaint is dismissed with prejudice.

    I.    PROCEDURAL BACKGROUND

On May 27, 2010, plaintiff Keith Mitan, appearing pro se, filed a one-count complaint alleging defamation against the defendants on behalf of himself and the estate of Frank Mitan as

the result of an article published on May 28, 2008, in the Christian County Headliner News entitled Mitan Used Aliases in Alleged Business Scams. (Doc. #1) Defendants filed a motion to dismiss or in the alternative for summary judgment. (Doc. #8) In addition to the substantive arguments contained in the motion, the motion also claimed that plaintiff Keith Mitan was engaged in the unauthorized practice of law in attempting to pursue a claim on behalf of the estate of Frank Mitan. (Doc. #9 at 32-35)

In response to the defendants' motion, plaintiff Keith Mitan filed an amended complaint alleging the same defamation claim, but solely on his own behalf. (Doc. #13) Defendants then filed a second motion to dismiss and/or for summary judgment claiming entitlement to summary judgment based on the fair report privilege.[1] The Court denied defendants' motion for summary judgment finding that the fifty-nine supporting exhibits did not "support a finding that the statements at issue in this case were an accurate and complete report of or a fair abridgement of the proceedings documented in the exhibits" and that "there had been no showing as to which, if any, documents defendants or their staff reviewed prior to authoring the article." (Doc. #24 at 10, 14)

On May 29, 2012, defendants filed a motion seeking to extend the discovery deadline for the limited purpose of obtaining discovery from plaintiff. (Doc. #32) In that motion, counsel for defendants noted that they had "timely complied with all of Plaintiff's discovery requests in this case, including answering interrogatories and producing more than 1,000 pages of documents." (Doc. #32 at 1) However, as of May 29, 2012, plaintiff had not responded to defendants' written

---

[1]The fair report privilege allows the press to publish accounts of official proceedings or reports even when they contain defamatory statements as long as the article is a fair and accurate report or abridgement. See Klein v. Victor, 903 F. Supp. 1327, 1336 (E.D. Mo. 1995); Englezos v. Newspress & Gazette Co., 980 S.W.2d 25, 32 (Mo. Ct. App. 1998).

2

discovery requests served on April 24, 2012, nor had plaintiff responded to requests for dates for his deposition.² (Doc. #32 at 2)

Plaintiff objected to the notice sent by defendants scheduling his deposition and also indicated he was unavailable to confer by phone with opposing counsel concerning his deposition prior to the date set for the close of discovery.³ (<u>See</u> doc. #32 at 2-3) On June 6, 2012, the Court scheduled a discovery conference for June 13, 2012. (Doc. #33) On June 11, 2012, plaintiff filed a Motion for Protective Order (doc. #34) claiming that interrogatories served on April 24 contained more than 25 interrogatories, were not limited to the proper time period and sought information which was not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also opposed the defendants' motion to extend the discovery deadline for the limited purpose of obtaining discovery from plaintiff on the basis that defendants had not agreed to engage in mediation nor had they filed the appropriate paperwork to opt out of the Court's early assessment program.⁴ (Doc. #36)

The Court denied the Motion for Protective Order on the grounds that it had been filed prior to plaintiff complying with that portion of Local Rule 37.1 that requires a conference with the Court. (Doc. #37)

---

²Defendants' subsequent filings in connection with the motion for sanctions reflect that plaintiff certified that responses to the interrogatories and requests for production of documents were mailed to defense counsel on May 29, 2012. Local Rule 26.4 provides that interrogatories and document requests and responses thereto are not to be filed with the Court, but a certificate of service shall be filed. A certificate of service was not filed by plaintiff in connection with his responses to these discovery requests.

³Local Rule 37.1(a)(1) and Paragraph 54 of the Scheduling Order provide that no motion to compel discovery can be filed until counsel for the parties have first conferred by telephone about the dispute.

⁴A mediation was held before neutral James Condry on July 24, 2012. Plaintiff had expressed to defendants a preference to use the services of Mr. Condry. Thereafter, Mr. Condry contacted the Court to advise that despite writing plaintiff on August 27, September 28, and December 11, 2012, plaintiff refused to pay his portion of the bill for Mr. Condry's mediation services.

### A. Telephone Discovery Conference on June 13, 2012

Thereafter, the Court held a discovery conference to review specific interrogatories and requests for production of documents with both parties. In determining what information would be relevant, plaintiff indicated that he was not seeking damages for lost income and that his damage claim was based only on damage to reputation. (Doc. #40 at 6) The Court clarified plaintiff's position by asking: "But no loss of income associated with the damage to reputation?" and plaintiff responded: "Correct." (Doc. #40 at 6)

The first interrogatory and request for production of documents discussed by the Court and the parties on June 13 dealt with plaintiff's efforts to have his Michigan law license reinstated after it was suspended in 2007. Plaintiff had initially taken the position that this interrogatory was not relevant, but later concluded that if reinstatement had been denied, it might be relevant. However, plaintiff told defense counsel that reinstatement had not been denied. (Doc. #40 at 6-7) During the conference, plaintiff explained that, in Michigan, an Attorney Discipline Board (hereinafter "Disciplinary Board") is the deciding party and handles the application for reinstatement. (Doc. #40 at 8) The Disciplinary Board asked for comments on plaintiff's reinstatement request via a publication in the state bar journal. Plaintiff indicated that he did not know whether they received comments. (Doc. #40 at 8)

During this discussion, counsel for defendants agreed that rather than answering an interrogatory, plaintiff could respond to the accompanying request for production of documents. Mr. Rhodes, defense counsel, indicated that "[i]f he could simply produce his application to reinstatement and any correspondence he's received to or from the commission,[5] he would not

---

[5]Although plaintiff stated that a Disciplinary Board was handling his application for reinstatement, based upon the discussions throughout the course of discovery and documents produced by defendants as part of the sanction motion, it is clear that a grievance commission

4

have to answer the more specific information, because it sounds to me that everything he knows is in these documents." (Doc. #40 at 9) The Court then made inquiry of plaintiff:

> THE COURT: Are you willing to do that?
>
> MR. MITAN: Yes.
>
> THE COURT: Okay. So, in response to Document Request Number 1, you're going to submit to Mr. Rhodes the application for reinstatement to the Michigan grievance committee and correspondence to and from the grievance commission. And how long will it take you to do that?
>
> MR. MITAN: Oh, I could probably do that within a week. …

(Doc. #40 at 9) Following further discussion, defendants agreed to redraft certain of the interrogatories and document requests to address plaintiff's objections. The Court gave defendants until June 20, 2012,[6] to submit the revised interrogatories and plaintiff until July 11, 2012, in which to respond.

B. Telephone Discovery Conference on July 20, 2012

Although plaintiff was given until July 11, 2012, in which to respond to the revised discovery requests, the postmark on the plaintiff's responses was dated July 16, 2012. (Doc. #50 at 3) At the earlier discovery conference, it had been agreed that rather than responding to an interrogatory about plaintiff's efforts to have his law license reinstated, he would provide documents concerning that effort. (Doc. #50 at 3) However, in the information submitted to opposing counsel on July 16, 2012, plaintiff produced only the cover letter to the bar submitting his petition for reinstatement, but none of the supporting documents. (Doc. #50 at 3) By the time of the telephone conference on Friday, July 20, 2012, counsel for the defendants had also

---

appointed by the Disciplinary Board and an attorney for the grievance commission were involved in conducting hearings and evaluating the petition for reinstatement.

[6]Given the short time period for the completion of discovery, defendants revised the interrogatories and document requests and resubmitted them to plaintiff on June 13, 2012. (Doc. #50 at 3)

5

learned that more than 400 pages of documents had been provided to plaintiff by the Disciplinary Board in connection with plaintiff's reinstatement claims.[7]

At the time of the telephone conference, this material had not been produced by plaintiff. (Doc. #50 at 3-4) Defense counsel had been attempting to obtain this information prior to plaintiff's deposition, which was set for Monday, July 23, 2012, and the Court noted it did not know how plaintiff could get this information to defendants before the Monday deposition. (Doc. #50 at 6) Further, when the Court tried to ascertain from plaintiff exactly what had been produced to him, plaintiff indicated he was not sure and stated, "I didn't ever even actually went through that entire 400 pages."[8] (Doc. #50 at 8) The Court reiterated that plaintiff was to provide to defendants the copy of his petition for reinstatement and any correspondence from the bar committee including information that had been provided to them. (Doc. #50 at 5, 6)

Additionally, defendants had requested information about the business relationship between plaintiff and the other members of his family, including those that were named in the news report. (Doc. #50 at 12-13) During the initial phone conference on June 13, 2012, plaintiff objected to the requests for financial information on the basis that the requests were too vague and covered too broad a time period.[9] In response to narrowed requests, plaintiff raised for the first time a claim of attorney-client privilege. (Doc. #50 at 12-15)

During the July 20, 2012, conference, plaintiff also advised the Court and opposing counsel that the United States Postal Inspection Service had seized a "bunch of my documents." (Doc. #50 at 16-18) The Court pointed out that in the prior discovery conference at no time had

---

[7]A proof of service dated May 8, 2012, indicated that a copy of the grievance administrator's reinstatement report was served on petitioner along with all of the accompanying exhibits via regular and certified mail to two different addresses in Michigan. (See doc. #52 at 21)
[8]The Court repeatedly attempted to ascertain what documents had been turned over to plaintiff by the Disciplinary Board. (See doc. #50 at 7-10)
[9]See discussion at doc. #40 at 16-25.

plaintiff indicated he would be unable to produce documents prior to 2009 because of their unavailability. (Doc. #50 at 24)

The parties were advised to proceed with the scheduled depositions and mediation with the understanding that the time for completing depositions would be held open until all discovery had been produced. Given the extent of the ongoing discovery dispute, an in-person discovery conference was set for August 17, 2012.

C. <u>In-Person Discovery Conference on August 17, 2012</u>

Between July 20, 2012 and August 17, 2012, plaintiff produced no additional documents despite his indication during the July 20, 2012, conference that he would provide the petition for reinstatement as well as correspondence from the grievance committee.[10] (Doc. #56 at 2) Thus, this issue was again addressed during the August 17, 2012, conference. At that time, the Court directed plaintiff to produce all records which he had sent to or received from the grievance committee.

> **THE COURT: The Court indicated it wanted those records produced. And if I didn't indicate that then, I'm indicating that now.**
>
> MR. MITAN: Yes, Your Honor.

(Doc. #56 at 13)(emphasis added)

> THE COURT: I don't think -- I'm going to go back and look, but I don't know that I really had to clarify anything today. I mean, I think my ruling should have been very, very clear. When I was limiting it time-wise, I was limiting what it was that you were going to have to do in terms of searching your records.
>
> MR. MITAN: Your Honor, this Attorney Grievance Commission materials -- originally I had a -- before -- we had a telephone conference before we talked to the Court. And I told Mr. Rhodes I didn't think it was relevant. And

---

[10]Mr. Mitan indicated that "[s]omehow the petition did not get included and the cover letter did. And I did indicate to Mr. Rhodes that I would look for it. I did find it and I am prepared to give it to him as I indicated I would." (Doc. #50 at 5) "I also appreciate the Court giving us this time so we can get this straightened out before next week …" (Doc. #50 at 5)

7

Mr. Rhodes said, well, I do think it's relevant if they denied your petition, because I want to know the basis that they denied your petition. And I said, okay, fine. And I supplemented right before the first telephone conference and indicated the petition had not been denied. Mr. Rhodes then changed his position and said it's relevant because he wants to see what I filed. And then we got into somehow about correspondence. And the thing keeps expanding, expanding, expanding. I don't -- I mean, I'll certainly do it, and I understand that's our ruling, but I don't -- I mean, the relevance of this to the facts in this case is non-existent. But I –

THE COURT: You know what? In the amount of time that we have spent with our various telephone conference and here today about it, you probably could have produced it several times over.

MR. MITAN: Agreed, Your Honor.

THE COURT: **So, what I'm directing you to produce is the communication from the Attorney Grievance Committee or the bar, I mean, whatever. What I don't want to have is, I mean, it seems to me that people are parsing their words. It ought to be very clear. You filed a Petition for Reinstatement. There was an investigation. Documents were gathered. It's clear that you've been provided with copies of those. I want you to produce that file to Mr. Rhodes.**

**MR. MITAN: Yes, Your Honor.**

THE COURT: Without you going through and saying, oh, I don't think this is relevant or I think you have this or I think this is outside the Court's time period. The Court's time periods dealt with what you had to do in terms of searching your records. It had nothing to do with a grievance file provided to you by this bar committee.

MR. MITAN: I understand, Your Honor. And I don't want to argue with the Court. But the basis that the Court had originally set the time periods was because it had made some ruling on relevance. And that was my –

THE COURT: **Mr. Mitan.**

**MR. MITAN: Yes.**

THE COURT: **This file needs to be produced.**

**MR. MITAN: Got it, Your Honor.**

THE COURT: **In its entirety.**

**MR. MITAN: Yes, Your Honor.**

8

(Doc. #56 at 15-16)(emphasis added)

>    THE COURT: We've had enough problems with discovery in this case that I just want that entire file produced to him.
>
>    MR. MITAN: Yes, Your Honor. I would like then, I guess, two weeks to do that.
>
>    MR. RHODES: That's fine, Your Honor.
>
>    THE COURT: All right. And so today is August 17th. You will have that complete file in the mail to him by August 31st.
>
>    MR. MITAN: Yes, Your Honor.

(Doc. #56 at 17-18) Thus, plaintiff was given a deadline of August 31, 2012, for production of documents responsive to document request no. 1.

During this conference, the Court also discussed plaintiff's responses to revised document request nos. 15, 16 and 17,[11] and plaintiff's claim that the only documents he possessed relating to these requests were in the possession of the United States Postal Inspection Service. (Doc. #50 at 34) Prior to the August 17, 2012, conference, plaintiff filed a copy of a search warrant inventory listing materials seized by the Postal Inspection Service on October 1, 2009. (See doc. #53-3 at 13) This document reflects that on October 1, 2009, various items were seized from 3230 Reba Court in Bloomington, Indiana, Deckard Homes. (Id.) Plaintiff advised the Court that this was a vacant house. Plaintiff told the Court that although plaintiff was a Michigan lawyer with offices in Michigan prior to his suspension, after his suspension plaintiff placed his documents in storage in the vacant house of which Mitan Estates, Inc. was the "vendee." (Doc. #56 at 38-42) When asked whether items on the inventory such as fifteen

---

[11]Defendants' Revised First Request for Production of Documents to Plaintiff is doc. #85-10 and plaintiff's response thereto is doc. #85-12.

boxes of videotapes were his, plaintiff stated: "Those may have been. These are probably my brothers." (Doc. #56 at 41-42)

## II. APPLICABLE LEGAL STANDARDS

Defendants seek the sanction of dismissal pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) for plaintiff's failure to provide reinstatement documents, settlement agreements, and financial records during the discovery process. (Doc. #86) Rule 37(b)(2)(A)(v) provides in part:

(b) Failure to Comply with a Court Order.

\* \* \*

(2) *Sanctions in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

\* \* \*

(v) dismissing the action or proceeding in whole or in part;

Under this section, the Court may impose sanctions for discovery violations, including dismissal of the action. The Eighth Circuit allows dismissal to be considered as a sanction only if there is: "(1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party." Keefer v. Provident Life & Acc. Ins. Co., 238 F.3d 937, 940 (8th Cir. 2000)(citing Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000)). Although a district court need not impose the least onerous sanction, normally fairness requires it to consider whether a lesser sanction is available or appropriate before dismissing a case with prejudice. See Keefer, 238 F.3d at 941. However, if the facts show both willful misconduct and bad faith, the court "need

not investigate the propriety of a less extreme sanction." Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001). When the record demonstrates a willful and bad faith abuse of discovery and the non-cooperating party could not be unfairly surprised by the action, no hearing is necessary before sanctions are imposed. See Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999).

A. Reinstatement Records

Plaintiff's response to that portion of defendants' Motion for Sanctions which addresses his failure to produce records from the grievance committee is illustrative of plaintiff's approach to the discovery process. Plaintiff contends that the Court never addressed Document Request No. 1 (the reinstatement records) in its Order of October 26, 2012, nor did defendants raise it in their Motion to Compel. (Doc. #87 at 7) According to plaintiff, production of these documents was discussed during the August 17, 2012, hearing. (Doc. #87 at 7) However, plaintiff contends that while the Court indicated that the transcript of the October 26, 2012, hearing constituted an Order, it never indicated that the August 17, 2012 transcript constituted an Order and plaintiff was never given a copy of the August 17, 2012 transcript. (Doc. #87 at 7)

The Procedural Background set forth above tracks the progress of discovery on the reinstatement records. On June 13, 2012, plaintiff agreed to produce these records "within a week." (Supra at 5) During the July 20, 2012, telephone conference, the Court directed plaintiff to provide a copy of his petition for reinstatement and any correspondence to or from the grievance committee. (Supra at 6) During the in-person conference on August 17, 2012, the Court again directed plaintiff to produce the documents—in fact the Court indicated several times that the records should be produced. (Supra at 7-9) Plaintiff asked for and was given until August 31, 2012, in which to produce the documents. (Supra at 9)

11

Following the June 13, 2012, conference, defendants were provided with four pages responsive to this request—plaintiff's transmittal letter to the clerk forwarding his petition for reinstatement and a three-page notice of hearing. (See doc. #86 at 9 referencing doc. #85-27, Ex. B, Nos. M000021 and M000022-24).

During the second conference on July 20, 2012, defense counsel noted that plaintiff had only produced the notice of hearing and a cover letter forwarding his petition for reinstatement, but not his petition for reinstatement. (Doc. #50 at 3) By that time, defense counsel had contacted the grievance committee and had been advised that plaintiff had been provided with more than 400 pages of documents. (Doc. #50 at 3) None of those documents had been produced by plaintiff as of the July 20, 2012, telephone conference. (Doc. #50 at 4) The Court again ordered plaintiff to produce these documents. (Supra at 6)

No further documents relating to the reinstatement petition or correspondence were produced until August 31, 2012, when in response to the Court's August 17, 2012, ruling, plaintiff produced to defendants 231 pages of documents, M000330-560. (Doc. #86 at 12; see doc. #85-32, Ex. D) Defendants point out that when they compared those documents to the index of documents set forth in the Grievance Administrator's Reinstatement Report—which defendants obtained independently from the grievance commission and which plaintiff had failed to produce—it was obvious that not only had plaintiff failed to produce the 20-page report itself, he had also failed to produce more than one hundred pages of documents which were attached to the report. (Doc. #86 at 12) The index of documents shows that a total of 385 pages of documents were provided to plaintiff as attachments to the grievance commissioner's report. (See doc. #85-32 at 20) Plaintiff, however, had provided less than 250 pages of documents to defendants. (See doc. #85-32, Ex. D) The first 54 pages listed in the index of documents, which

were not produced by plaintiff, contained a recorded reinstatement interview of plaintiff given on February 17, 2012. (Doc. #85-37, Ex. D)

It was later determined that in addition to the February 17, 2012, reinstatement interview, hearings had been held on by the grievance panel on May 18, August 21, and September 5, 2012. (Doc. #85-40 at 4) Exhibit indexes are noted to be attached to the hearings of May 18 and August 21, 2012. (Doc. #85-40 at 3) The Report of the Tri-County Hearing Panel #81 notes that "[p]etitioner and the Grievance Administrator each submitted numerous exhibits which are more specifically described in the transcript." (Doc. #85-40 at 5) It is unclear exactly what exhibits were submitted by petitioner; however, during the May 18, 2012, hearing, plaintiff indicated that he had satisfied the requirements for reinstatement and stated:

> … I've done everything to request reinstatement properly, I submitted to Mr. McGlinn all of the—I submitted the personal history affidavit along with a large number of bank statements which were required and other information, I attended that the date he requested a interview in front of a court reporter where he asked me questions, I think it was for about an hour, hour and-a-half, answered all the questions, I didn't avoid any of the questions. He did ask me for some additional bank statements on another account, I supplied those to him …

(Doc. #85-39 at M000647)(emphasis added) Defendants point out that plaintiff has not produced any of the documents referenced in this recorded hearing (doc. #86 at 14), despite the Court having ordered plaintiff to produce all documents sent or received from the grievance committee.

During his deposition, plaintiff acknowledged that he had not complied with the Court's order in connection with the first document request and that he had other documents that he had received from the committee or the bar which he had not provided to defense counsel. (Doc. #85-17) On October 31, 2012, plaintiff filed a supplemental response to Document Request No. 1 of Defendants' Revised First Request for Production of Documents to Plaintiff in which plaintiff stated: "See doc #57-12, doc #57-14 and doc #57-15. The Plaintiff's investigation

continues." (Doc. #85-18) However, the documents referenced were documents that defendants had obtained independently and not as a result of plaintiff's production efforts. (Doc. #86 at 13)

In the Court's view, the reinstatement investigation of plaintiff was highly relevant and discoverable since the only damages which plaintiff claims in this litigation are reputational.[12] Plaintiff offered no reasonable excuse as to why he failed to produce all of the documents which he sent to or received from the grievance commission. That plaintiff would now claim there was no order requiring that he produce these records is further evidence of his complete disregard for this Court's orders as well as his discovery obligations.

B. Other Records

In the Court's view, plaintiff's explanation that financial records, such as those requested in revised Document Request No. 16, were stored in a vacant home in Indiana and unlawfully seized by the Postal Inspector seems so implausible as to be lacking credibility. This is underscored by the fact that banking and financial records were provided to the grievance administrator, but not to defendants.

Defendants maintain that plaintiff's actions in failing to produce financial records and settlement agreements violated this Court's orders as well as plaintiff's discovery obligations and also warrant dismissal of the action. The Court concludes that it need not address these issues in the same detail as it has with respect to the discovery history connected with Document Request No. 1 for the reason that plaintiff's actions in connection with that document request are sufficient to establish a willful and bad faith failure to comply with the Court directives.

---

[12]Proof of actual reputational harm is an absolute prerequisite in a defamation action. See Johnson v. Allstate Indem. Co., 278 S.W.3d 228, 235 (Mo. Ct. App. 2009).

## III. CONCLUSION

The Senior Counsel to the Grievance Commission issued a report on April 8, 2012, in which he indicated that transcripts of hearings and exams taken as recently as April 10, 2012, "show a continued pattern of Petitioner's obstructionist and dissembling behavior towards the court system." (Doc. #85-21) A review of plaintiff's court filings and statements in this case demonstrates that this attitude has continued with respect to his discovery obligations here. Based upon the entire record, the Court finds that plaintiff willfully and in bad faith failed to produce all of the records responsive to Document Request No. 1, despite repeated orders and directives by the Court to do so. Accordingly, it is

ORDERED that Defendants' Motion for Sanctions (doc. #85) is granted. Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v), plaintiff's amended complaint is dismissed with prejudice. It is further

ORDERED that to the extent that plaintiff has not yet paid James Condry, plaintiff is directed to pay his costs of the mediation before Mr. Condry in the amount of $500.00.

                                                  */s/ Sarah W. Hays*
                                                  SARAH W. HAYS
                                    UNITED STATES MAGISTRATE JUDGE